THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
CEDRIC FIGURES, Defendant-Appellant.

First District (2nd Division)   No. 1—89—1225

Opinion filed June 28, 1991.

Randolph N. Stone, Public Defender, of Chicago (Joseph M. Gump and Vicki Rogers, Assistant Public Defenders, of counsel), for appellant.

John O'Malley, State's Attorney, of Chicago (Renee Goldfarb and David Stabrawa, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HARTMAN delivered the opinion of the court:

Defendant was convicted at a bench trial of aggravated battery, armed violence, and attempted murder. (Ill. Rev. Stat. 1987, ch. 38, pars. 12—4, 33A—2, 8—4(a), 9—1(a).) On appeal, he argues that (1) aggravated battery, which served as the predicate felony for armed violence, was not proved because the State failed to show that he caused "great bodily harm"; (2) his aggravated battery conviction based on use of a deadly weapon and his armed violence conviction were both premised upon the same act and the former must be vacated; (3) his conviction of attempted murder based on an accountability theory was improper; and (4) the circuit court abused its discretion in sentencing him. We affirm defendant's convictions for aggravated battery and attempted murder, vacate his conviction and sentence for armed violence, and remand for resentencing, for reasons which follow.

The State's evidence established that on July 19, 1988, David Tayloer, Fred Thornton, and several others were playing basketball in an outdoor lot. Many of those present, including Tayloer and Thornton, were members of a "social club" called the Gigolos. Defendant, who was a member of a rival club, approached the area

with 8 to 10 other men, including Kenyatte Freeman, and members of the two groups began shouting at each other. Defendant had been involved in a fight earlier in the day with one of the Gigolos. Tayloer and Thornton both testified that no one among their group had any weapons. Defendant and two of the men who were with him, however, drew handguns and attempted to fire them. According to Thornton, defendant yelled "these ain't no 'blank-blank' blanks." The guns only clicked at first, and Tayloer, along with several others, began advancing toward defendant's group. Defendant and Freeman continued to pull the triggers as they retreated. Defendant aimed at Tayloer and the gun discharged; the bullet hit Tayloer's shoe but did not pierce his skin. Thornton was shot in the abdomen by Freeman and consequently was hospitalized for 10 days. After several shots were fired, defendant and his companions fled.

Ladonna Shaw testified for defendant. She lived adjacent to the lot in which the shooting occurred and watched the incident from her front porch. Defendant was present at the scene but did not have a gun; two other men were responsible for the shooting. She also said that the men who had been playing basketball did not have any weapons.

Defendant testified in his own defense. He had been involved in a fight earlier in the day with Carson Ross, a member of the Gigolos. Ross and another had attacked defendant with a baseball bat and chased him to his house, where more fighting occurred. Later, defendant and several others confronted his assailants. After a bottle had been thrown at defendant's group, Freeman and another of defendant's friends fired their handguns into the crowd. Defendant drew his gun, which he had brought from his house, and fired it once into the air. He said that he was afraid and was only trying to scare the rival group, although he admitted that none of them was armed.

The court found defendant guilty of aggravated battery, armed violence, and attempted murder. (Ill. Rev. Stat. 1987, ch. 38, pars. 12—4, 33A—2, 8—4(a), 9—1(a).) He was sentenced to concurrent prison terms of 12 years for armed violence, 12 years for attempted murder, and 5 years for aggravated battery.

I

Defendant's armed violence conviction was based upon the predicate felony of aggravated battery. (See Ill. Rev. Stat. 1987, pars. 33A—2, 12—4.) Defendant, however, argues that he was not

proved guilty beyond a reasonable doubt of aggravated battery because the State failed to establish that he inflicted "great bodily harm" upon Tayloer.

■ Infliction of great bodily harm is an essential element of the offense of aggravated battery. (Ill. Rev. Stat. 1987, ch. 38, par. 12—4(a).) It has been held repeatedly that the term is not susceptible of a precise legal definition; it requires, however, an injury of a greater and more serious character than an ordinary battery. (*People v. Costello* (1981), 95 Ill. App. 3d 680, 684, 420 N.E.2d 592; *People v. Carmack* (1977), 50 Ill. App. 3d 983, 986, 366 N.E.2d 103; *People v. Lyons* (1974), 26 Ill. App. 3d 193, 199, 324 N.E.2d 677.) The question of whether the victim's injuries rise to the level of great bodily harm is a question for the trier of fact (*People v. Cochran* (1989), 178 Ill. App. 3d 728, 738, 533 N.E.2d 558), which is neither dependent upon hospitalization of the victim, nor the permanency of his disability or disfigurement (*People v. Jordan* (1981), 102 Ill. App. 3d 1136, 1140, 430 N.E.2d 389). Instead, the determination centers upon the injuries which the victim did, in fact, receive. *Costello*, 95 Ill. App. 3d at 684.

The Illinois Supreme Court has provided some guidance in defining the term "bodily harm" as it relates to simple battery:

> "Although it may be difficult to pinpoint exactly what constitutes bodily harm for the purposes of the statute, some sort of physical pain or damage to the body, like lacerations, bruises or abrasions, whether temporary or permanent, is required." (*People v. Mays* (1982), 91 Ill. 2d 251, 256, 437 N.E.2d 633.)

Because great bodily harm requires an injury of a graver and more serious character than an ordinary battery, simple logic dictates that the injury must be more severe than that set out in the *Mays* definition. The word "great" must be given effect in construing the aggravated battery statute; statutes should be interpreted so that no word or phrase is rendered superfluous or meaningless. *People v. Parvin* (1988), 125 Ill. 2d 519, 525, 533 N.E.2d 813.

The State relies on *People v. Matthews* (1984), 126 Ill. App. 3d 710, 467 N.E.2d 996, in which the victim was struck on the head with a gun and received several full-force blows on the head and arms with a baseball bat. Despite the victim's statement that "I only had a bruise on my head," the jury determined that she had suffered great bodily harm and convicted defendant of aggravated battery. That finding was affirmed on appeal. 126 Ill. App. 3d at 714-15.

■ In this case, Tayloer's injury is not as severe as those suffered by the victim in *Matthews*. Defendant fired a shot at Tayloer which pierced his shoe but did not penetrate his skin. One witness saw Tayloer limping after the shot, but no one saw any blood on his shoe. Tayloer himself admitted that his foot did not bleed as a result of the shot. Although he was treated at the hospital, Tayloer's testimony indicates that his injury required very little attention:

"They put a little iodine on my foot. At first they cut the little blood clot open, and then they put iodine on there and patched it up."

The injury clearly rises to the level of "bodily harm" as defined in *Mays*. We find, however, that Tayloer did not suffer great bodily harm. The circuit court's finding in that regard is not supported by the evidence.

Defendant's armed violence conviction, therefore, must be vacated. Because the State failed to prove beyond a reasonable doubt that defendant committed aggravated battery based on great bodily harm, that offense cannot serve as the predicate felony for armed violence.

## II

■ Defendant was convicted of aggravated battery for intentionally or knowingly causing bodily harm through the use of a deadly weapon. (Ill. Rev. Stat. 1987, ch. 38, par. 12—4(b)(1).) Although the State conceded in its brief that this conviction should be vacated, it did so based on the assumption that defendant's armed violence conviction would stand; both convictions cannot be predicated on the same act. (*People v. Payne* (1983), 98 Ill. 2d 45, 54-55, 456 N.E.2d 44.) Because we have vacated defendant's conviction for armed violence, aggravated battery is the only offense predicated upon defendant's shooting of Tayloer.

The evidence established that defendant pointed his handgun at Tayloer and pulled the trigger several times. The gun misfired at first, but eventually discharged, sending a shot toward Tayloer. The bullet penetrated his shoe and grazed his foot, causing a small blood clot. This evidence, when viewed in the light most favorable to the State, supports the circuit court's finding that defendant committed aggravated battery. *People v. Pintos* (1989), 133 Ill. 2d 286, 291, 549 N.E.2d 344; *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267.

This felony, however, cannot serve as the basis for armed violence, as that would constitute an improper double enhancement. The use of a dangerous weapon which serves to enhance a charge of battery to aggravated battery cannot also serve to further enhance the latter charge to armed violence. *People v. Van Winkle* (1981), 88 Ill. 2d 220, 222, 430 N.E.2d 987; *People v. Haron* (1981), 85 Ill. 2d 261, 278, 422 N.E.2d 627.

Based on the preceding reasoning, defendant's conviction for aggravated battery predicated upon the use of a deadly weapon is affirmed.

## III

Defendant contends that his conviction for attempted murder, which was based on an accountability theory, must be reversed because the State failed to prove beyond a reasonable doubt that Kenyatte Freeman had intent to kill.

An accused commits an attempt when, with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense. (Ill. Rev. Stat. 1987, ch. 38, par. 8—4(a).) In order to sustain a conviction for attempted murder, the State must prove that the accused had specific intent to kill the victim. (*People v. Mitchell* (1984), 105 Ill. 2d 1, 9, 473 N.E.2d 1270.) Because it can rarely be proved by direct evidence, specific intent to kill may be inferred from the circumstances, such as the character of the assault or use of a deadly weapon. (*People v. Tyler* (1989), 188 Ill. App. 3d 547, 553, 544 N.E.2d 1077.) Further, a person who fires a gun at or towards another, with either malice or total disregard for human life, may be convicted of attempted murder. *People v. Starks* (1989), 190 Ill. App. 3d 503, 510, 546 N.E.2d 71, *appeal denied* (1990), 129 Ill. 2d 571.

Defendant relies on three cases in which the reviewing court reversed the finding of specific intent to kill. All three cases, however, can be distinguished. In *Mitchell* (105 Ill. 2d 1, 473 N.E.2d 1270), defendant beat her 16-month-old baby with her hand, fist, and a belt until the child was comatose. In *People v. Jones* (1989), 184 Ill. App. 3d 412, 541 N.E.2d 132, defendant and two others entered a family's apartment and beat the man, his wife, and their child. One assailant was armed with a knife and another had a handgun, although no shots were fired. In *People v. Thomas* (1970), 127 Ill. App. 2d 444, 262 N.E.2d 495, defendant entered a woman's apartment, stabbed her in the shoulder, beat her, and raped her. In

each of those cases, the defendants were all within the confines of a private residence and had the opportunity to commit murder, if they had so intended. Further, no gun was discharged in any of the three cases.

■ Here, the evidence established that Freeman, along with defendant, approached several unarmed men and drew his handgun. When he attempted to fire, the gun only clicked, and the unarmed men began to advance. Freeman continued to pull the trigger, and his gun discharged, striking Thornton in the abdomen. Immediately after shooting Thornton, Freeman and the others fled. The circuit court held that Freeman pointed his gun and fired at an unarmed man with total disregard for human life. Viewing the evidence in the light most favorable to the State, we conclude that a rational trier of fact could have convicted defendant of attempted murder on an accountability theory, in that he facilitated the commission of this offense. See *Pintos,* 133 Ill. 2d at 291; *Collins,* 106 Ill. 2d at 261; Ill. Rev. Stat. 1987, ch. 38, par. 5—2(c).

## IV

■ Defendant was sentenced to concurrent prison terms of 12 years for attempted murder, 12 years for armed violence, and 5 years for aggravated battery. As we cannot determine with any degree of certainty whether or not the conviction vacated herein may have influenced the circuit court in imposing sentences for the remaining convictions of attempted murder and aggravated battery, the sentence should be considered in a new hearing. (*Mitchell,* 105 Ill. 2d at 16; *People v. Olsen* (1987), 161 Ill. App. 3d 945, 951, 514 N.E.2d 233.) In light of this determination, it is unnecessary to address defendant's argument that the circuit court abused its discretion in sentencing him.

Accordingly, the judgments of conviction for attempted murder and aggravated battery based on the use of a deadly weapon are affirmed, the sentences vacated, and the cause remanded for a new sentencing hearing as to those offenses. The conviction and sentence for armed violence are vacated.

Affirmed in part; vacated in part and remanded.

DiVITO and COCCIA, JJ., concur.