Filed 8/13/21  P. v. Kerr CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>WILLIAM JOSEPH KERR,<br><br>     Defendant and Appellant. | F078694<br><br>(Super. Ct. No. CRF56900)<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Tuolumne County.  Kevin M. Seibert, Judge.

Robert Navarro, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Sally Espinoza, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

**INTRODUCTION**

A jury convicted defendant William Joseph Kerr of first degree burglary (Pen. Code, § 459; count III), causing injury to a person with whom defendant had a dating relationship (§ 273.5, subd. (a); count IV), and battery with serious bodily injury (§ 243,

subd. (d); count V) after his girlfriend reported he kicked in the door of the motel room where they were living, hitting her in the face with the door, and then held a sharp-edged object to her throat, cutting her neck. (Undesignated statutory references are to the Penal Code.) After the trial, defendant admitted he had three prior convictions which qualified as strike offenses under sections 667, subdivisions (b)–(j), and 1170.12, subdivision (b), and as serious felony priors under section 667, subdivision (a)(1). He also admitted a prior prison term enhancement (§ 667.5, former subd. (b)). The court sentenced defendant to 25 years to life on count III based on the three strikes law, enhanced by 15 years for three 5-year prior serious felony convictions (§ 667, subd. (a)) and an additional year for the prior prison term. It stayed the midterm sentences imposed for counts IV and V pursuant to section 654.

In this appeal, defendant challenges his convictions and his sentence, arguing (1) the evidence was insufficient to establish his prior conviction for battery with serious bodily injury was a serious felony as required for it to qualify as a strike prior; (2) his counsel was ineffective in failing to argue this conviction did not qualify as a strike; (3) the court violated his due process rights by failing to instruct the jury on lesser included offenses applicable to counts IV and V; (4) the evidence was insufficient to establish the victim suffered traumatic injury or serious bodily injury as necessary to sustain these counts; (5) the trial court erred in failing to sua sponte instruct the jury on defense of others; (6) the matter should be remanded for a new sentencing hearing to permit the court to exercise its discretion and decide whether to strike defendant's serious felony prior in light of Senate Bill No. 1393 (2017–2018 Reg. Sess.) (Senate Bill 1393); and (7) on remand, the trial court should be instructed to strike defendant's prison prior enhancement in light of the passage of Senate Bill No. 136 (2019–2020 Reg. Sess.) (Senate Bill 136). After the parties filed their briefing, defendant filed a petition for writ of habeas corpus in the superior court seeking reversal of his conviction in count III for burglary based upon ineffective assistance of counsel. The superior court granted the

petition and reversed defendant's conviction on count III. The court indicated it would await direction on resentencing from our court.

We reverse defendant's conviction on count V and remand for the trial court to reduce the conviction to the lesser included offense of simple battery or to permit the People to retry this count with a properly instructed jury. If the People elect not to retry this count or count III (the reversed burglary conviction), we direct the court to modify the judgment to reflect defendant's surviving convictions and to hold a resentencing hearing during which the court may decide whether the defendant's prior serious felony enhancements still apply and, if so, whether to exercise its newfound discretion pursuant to Senate Bill 1393 and strike defendant's prior serious felony enhancements. The court is also directed to strike defendant's prior prison term enhancements pursuant to Senate Bill 136. In all other respects, we affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Defendant and the victim, referred to as Jane Doe, were in a relationship and lived together at a mobilehome park. Their home burned down and they eventually moved into a room at a motel. On the day of the incident giving rise to the charges, Doe and defendant went out to eat with a friend. They returned to the motel, but at some point defendant again left.

Doe was asleep when she heard knocking at the door. She got up and went to the door to open it, but it was forced open "really hard." The door hit Doe in the face, knocking her to the floor. Doe reported to police she was then in and out of consciousness; she recalled hearing a male's voice she recognized as defendant's. He asked Doe several times where the money was; Doe had $150 in the nightstand. At some point, Doe "woke up" and felt a "sharp-edged pain" at her throat. She eventually woke up again on the floor of the motel room alone; she could not find her room key, cellular phone, or the $150 she had left in the nightstand. She crawled out of her room and down the stairs.

3.

Doe called her friend Melissa H. and told her defendant had cut her throat. Melissa drove to the motel where Doe and defendant were staying, but she found Doe at the apartment complex next door where Doe said she had crawled to after the incident. According to Melissa, Doe looked "pretty messed up"; "[s]he was crying her eyes out"; "[s]he was afraid"; [s]he didn't know what to do"; "[s]he didn't have full recollection of everything that had happened, just bits and pieces." They went back to the motel where Doe told Melissa and the motel management defendant had kicked in the door, gotten on top of her, cut her throat with a machete, and she blacked out. She also reported her money, keys, and cellular phone were missing. Melissa did not believe Doe seemed intoxicated.

The owner of the motel where Doe and defendant were residing stated someone rang the bell for the motel lobby on the evening of the incident. Doe's friend was standing at the door and Doe was sitting on a nearby bench very upset and crying; Doe had a scratch on her neck, a small cut, and another scratch. When Doe caught her breath, she told the motel owner her boyfriend attacked her in her room. Doe explained defendant hit the door with his fist trying to get her to answer, and she was scared. He then kicked the door open and Doe was close enough to the door that it struck her in the head; the motel owner saw a large bump on Doe's forehead. Doe told the owner she hit the ground and defendant had a machete he used to try to cut her throat. Doe could not fight back because she was "about unconscious"; she was scared for her life. At Doe's request, the motel owner called 911 and provided them with information about the situation.

Corporal Carl J. Benson with the Tuolumne County Sheriff's Office was dispatched to the motel at approximately 10:27 p.m. that evening. He met with Doe in the motel's front office. Doe was visibly upset and had been crying. She had a fresh cut that appeared bright red with blood on the left side of her neck and bruising on the right side of her neck. An ambulance was called to attend to her. Doe explained to Benson

4.

what had occurred. Benson noticed a shoe print on the door to Doe's motel room. Doe told Benson defendant always had a machete with him, attached to his backpack. Corporal Benson searched Doe's room and found her and defendant's cellular phones and Doe's room key. There was significant damage to the door to the room.

At trial, Doe testified she did not recall speaking to an officer after the incident or numerous subsequent details the officer she spoke to testified she reported. She did not recall the events the prosecutor asked her about because she had been drinking a lot and was on antipsychotic medication at the time the events occurred. She denied defendant was known to carry a machete or knife on his person and instead stated she "was the one that carried a knife." She also denied that defendant took $150 from her; she remembered telling a friend she found the money while doing laundry. She also testified she did not recall hearing a voice after being struck with the door to the motel room or that the police found her cellular phone in her room that night.

Jeffrey P., a long-time friend of defendant, testified for the defense. Jeffrey went to lunch with defendant and Doe around the date of the incident giving rise to the charges. Defendant and Doe had been drinking and Doe got mad at defendant. They went back to defendant and Doe's motel room and Jeffrey left. Later, defendant asked Jeffrey to go check on Doe; so, he went back to the motel and saw her crying. Doe did not appear to be injured at that time; she was looking for a knife defendant had hidden. Jeffrey stayed for 45 minutes trying to calm down Doe. Doe talked about ending her own life. Jeffrey reported to the defense investigator Doe held a knife to her throat that night, but at trial he could not recall that specifically. He left the motel room after 45 minutes but came back the next day when Doe told him defendant had kicked the door in and tried to attack her; Jeffrey noticed a cut on Doe's neck at that time.

Defendant testified on his own behalf. He explained he dated Doe for six to seven months and recalled living with her at a motel on July 16, 2017. That day, defendant, Doe, and Jeffrey went to a restaurant to celebrate Doe's paycheck and had a "good time."

5.

Defendant and Doe went back to the motel when defendant realized he left his phone at the restaurant. Doe did not want defendant to go back to the restaurant; she accused him of wanting to cheat on her with the waitress. They argued for approximately 20 minutes before defendant left to retrieve his phone. After defendant got his phone back, he saw text messages from Doe. He went back to the motel. When he arrived, the motel room door was locked, so he knocked on it. Doe opened the door. As she was walking away, defendant noticed she had a knife in her hand. He went after her, grabbed the knife, and set it down. Doe was crying and heavily intoxicated; defendant asked her if she was on drugs and if she had spent all her money. He also asked Doe what she was going to do about her ankle monitor because they had been saving money so she could go "to court and pay for her ankle monitor to get put back on" after she had removed it. According to defendant, Doe had issues with alcohol and she used "meth" periodically. Doe told defendant not to leave and that "she didn't want to live if [he] was going to leave." Defendant left and went to his camp area near Jeffrey's, and he asked Jeffrey to go back and check on Doe. After he did not see Jeffrey again, defendant became concerned because of Doe's threats to end her life and her previous suicide attempts. So, defendant went back to the motel room and knocked on the door and yelled for Doe to open it. After receiving no response, he kicked in the door because he was concerned Doe was dead or attempting suicide. Doe was not inside and the knife was gone from the place defendant had set it earlier. The drawers had been pulled out, but defendant denied pulling them out. He also denied taking $150 from the motel room, holding a knife to Doe's neck, or physically attacking her and holding her to the ground. Defendant did not see Doe again until a few days later.

The jury found defendant not guilty of robbery (count I) or attempted robbery (count II). The jury convicted defendant of first degree burglary while a person was present in violation of section 459 (count III), causing injury to a person with whom the defendant had a dating relationship in violation of section 273.5, subdivision (a) (count

6.

IV), and battery with serious bodily injury in violation of section 273, subdivision (d) (count V).

Defendant admitted each of the prior conviction enhancement allegations, including that he suffered three prior convictions that qualified as strike priors under the three strikes law. At the initial sentencing hearing on December 7, 2018, defense counsel notified the court that Senate Bill 1393 would provide it discretion in imposing the serious felony enhancements pursuant to section 667, subdivision (a) starting January 1, 2019. The court then continued the sentencing hearing for two weeks later, but before Senate Bill 1393's effective date.

At the sentencing hearing, the court considered defendant's motion pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*). Defense counsel argued the first two strikes, one from 1998 and the other from 2001, were remote in time. The People responded defendant was in custody for a "good portion of the time" following the two initial strikes and the priors and current case were very serious. They argued the interests of justice would be served in this case by not striking the strikes. They further asserted "the nickel priors remain in full force and effect" because "what happened in that case was extremely serious." The court indicated its inclination to dismiss defendant's prior strike conviction for arson in violation of section 451, subdivision (d), which was incurred on May 1, 1998. It ordered the probation department to prepare a new updated sentencing report for the court's consideration, taking into account the dismissal of one strike.

The prosecutor notified the court the defendant would still be facing a 25-year-to-life sentence, and the court responded it was its intention to change that so it would "need to reconsider the issue on one of the other strikes." The court noted it thought "all of the same factors apply" with regard to striking defendant's 2001 strike conviction for a violation of section 422. The prosecutor argued defendant's 2001 section 422 strike conviction and his 2010 strike conviction for a violation of section 243, subdivision (d)

7.

were for serious felonies of violence, unlike the section 451, subdivision (d) case.  The prosecutor argued the section 243, subdivision (d) conviction involved "battery with serious bodily injury."  She asserted defendant did not fall outside the spirit of the three strikes law.  The defense responded the section 422 strike was a long time ago and involved a verbal threat; no one was injured in that incident.  After the court heard from defendant regarding the section 422 incident, it concluded it would take the matter under submission.  The parties did not raise any further argument.

At the next hearing, the court clarified that the defense agreed that "striking one strike doesn't do any good at all."  Accordingly, the court denied the *Romero* motion, noting "striking the strike for the PC 451(d) charge would have no impact on the sentence because the defendant would still have three strikes."  It held it did "not find any basis for granting the Romero motion as to any of the other strikes" or that defendant could be "deemed outside the spirit of the three-strikes law in whole or in part."  The court sentenced defendant to 25 years to life on count III for his first degree residential burglary conviction under the three-strikes law, enhanced by three consecutive five-year terms for his prior serious felony convictions pursuant to section 667, subdivision (a), and an additional year for a prior prison term enhancement pursuant to section 667.5, subdivision (b).  The court stayed the imposition of sentence for counts IV and V pursuant to section 654.

During the pendency of this appeal, defendant filed a petition for writ of habeas corpus in the superior court seeking reversal of his conviction in count III for burglary based upon ineffective assistance of counsel.  The superior court granted the petition, reversed defendant's conviction on count III, and forwarded its order to our court.  The superior court indicated it would await further direction on resentencing from our court.  After giving the parties an opportunity to object and having received no objections, this court filed an order on July 9, 2021, taking judicial notice of the superior court order.

# DISCUSSION

## I. Defendant Admitted His Prior Conviction Was a Serious or Violent Felony and Has Not Established Ineffective Assistance of Counsel

Defendant first argues there was insufficient evidence his prior conviction for a violation of section 243, subdivision (d) was a serious felony such that it qualified as a strike prior within the meaning of the three strikes law.

### A. Relevant Procedural History

Before trial, the court advised defendant of his right to have a jury trial on the prior conviction enhancement allegations, his right to have the People put on evidence of the prior convictions, and his right to testify in connection with the prior conviction enhancements; defendant waived these rights:

> "THE COURT: [W]e were talking about before we started the trial, there is an issue that comes up because you have some prior convictions.
>
> "THE DEFENDANT: Uh-huh.
>
> "THE COURT: Part of the enhancements and the charges that you are facing here are allegations of prior felony convictions, serious felony convictions that are strikes. As you know, I think you know—
>
> "THE DEFENDANT: Yeah.
>
> "THE COURT: —you have the right to have a jury try that in this case and determine whether or not you actually had those strike convictions. [¶] Do you understand you have that right?
>
> "THE DEFENDANT: Yeah.
>
> "THE COURT: All right. So if you had a jury trial, you would have a right to have twelve people who would have to come to a unanimous verdict in determining whether or not you had those strike convictions. [¶] You understand you have a right to have a jury make that decision?
>
> "THE DEFENDANT: Yeah.
>
> "THE COURT: You have a right to then, you know, require the People put on evidence of those prior convictions and you would have the

9.

right to testify and have your attorney help you pick the jury, all of that in connection with this. [¶] But your attorney tells me you want to admit the priors and waive the right to have a jury decide that issue, those issues; is that correct?

"THE DEFENDANT: Yes, Judge.

"THE COURT: Have you had enough time to talk to your lawyer to understand the consequences of giving up your right to a trial on those issues?

"THE DEFENDANT: Yes.

"THE COURT: Okay. And that is what you wanted to do?

"THE DEFENDANT: Yes, Your Honor.

"THE COURT: All right. Thank you very much.

"[PROSECUTOR]: Your Honor, it's—so there's three strike prior allegations. There are also multiple prison prior allegations, so the prison priors would be included in that waiver?

"THE COURT: Do you understand that there are enhancements that increase penalties because of prior felony convictions, in addition to the strike issue? [¶] Do you understand that you are giving up your right to have a trial and require the People to put on evidence of the prior convictions?

"[DEFENSE COUNSEL]: Those penalties apply if you get convicted.

"THE DEFENDANT: Okay. Yes.

"THE COURT: You want to give up that right?

"THE DEFENDANT: Yes."

Before sentencing, defendant then expressly admitted suffering certain prior convictions, all of which are defined as serious felonies in section 667, subdivision (a)(1) and as violent or serious felonies in section 1170.12, subdivision (b) and subject to sentencing pursuant to section 667, subdivisions (b) through (j) (strikes under the three strikes law):

10.

"[THE COURT:] [Defendant], do you admit you were convicted of the following violent or serious felonies as defined in … Section 1170.12(b) and thus subjected to the sentencing pursuant to 667(b) through (j). [¶] One is a 451(d) in Tuolumne County in 1998; do you admit that?

"THE DEFENDANT: Yes.

"THE COURT: There is a 422 of the Penal Code, conviction date January 2, 2001?

"THE DEFENDANT: Yes.

"THE COURT: And a conviction on July 19th, 2010, … Section 243(d)?

"THE DEFENDANT: Yes."

Defendant also admitted he was convicted of violations of section 451, subdivision (d), on May 1, 1998, section 422 on January 2, 2001, section 496 on October 18, 2004, and section 243, subdivision (d), on July 19, 2010.

## B. Standard of Review

"The People must prove each element of an alleged sentence enhancement beyond [a] reasonable doubt." (*People v. Delgado* (2008) 43 Cal.4th 1059, 1065.) "On review, we examine the record in the light most favorable to the judgment to ascertain whether it is supported by substantial evidence. In other words, we determine whether a rational trier of fact could have found that the prosecution sustained its burden of proving the elements of the sentence enhancement beyond a reasonable doubt." (*Id*. at p. 1067.)

## C. Applicable Law

Under the three strikes law, a prior conviction is a "serious felony" that counts as a strike for sentence enhancement purposes if it is a crime listed in section 1192.7, subdivision (c). (§ 667, subd. (d)(1).) Battery with serious bodily injury is not one of the crimes specified in section 1192.7, subdivision (c) as a "serious felony." (See § 1192.7; see also *In re Jensen* (2001) 92 Cal.App.4th 262, 268.) However, "any felony in which the defendant personally inflicts great bodily injury on any person, other than an

11.

accomplice," is a "serious felony" under the three strikes law. (See § 1192.7, subd. (c)(8).) Accordingly, to establish a prior battery qualifies as a "serious felony," the People must prove the defendant personally inflicted the injury, rather than that he aided and abetted another, and that the victim was not an accomplice. (See *ibid.*; *People v. Bueno* (2006) 143 Cal.App.4th 1503, 1508.)

### D.    Analysis

Defendant contends the evidence was insufficient to support the trial court's conclusion his prior conviction for a violation of section 243, subdivision (d) (battery) qualified as a strike. He argues section 243, subdivision (d) is not listed as a qualifying violent or serious felony under section 667.5, subdivision (c) or 1192.7, subdivision (c); rather, the crime of battery "only becomes a serious felony if the prosecution can prove that in the prior offense defendant inflicted great bodily injury on a person who was not an accomplice." Defendant asserts "[t]he only facts regarding the 2010 offense in this record are a restatement of the probation report in the prior case and does not qualify as a part of the record of conviction proving it as a strike offense." He asserts his counsel provided him ineffective assistance by permitting him to admit the 2010 conviction was a prior strike "when there was no competent evidence qualifying it as such." He also argues counsel was ineffective in failing to challenge the validity of the 2010 prior conviction as a strike. The People respond defendant voluntarily and intelligently waived his trial rights on the prior strike conviction. They concede that generally the prosecution must present evidence to establish a prior conviction qualifies as a strike conviction, and a violation of section 243, subdivision (d) only qualifies as a strike if the defendant personally inflicted great bodily injury. But they assert proof of a prior conviction is not required where the defendant admits a properly pleaded enhancement. They further contend defendant's ineffective assistance claim fails because he did not establish prejudice. Defendant did not establish his prior conviction was not a strike or that he

12.

would have been entitled to a result more favorable to him if he did not admit the prior conviction was a strike. Rather, the court reconsidered striking a strike because it would not affect the sentence. We agree with the People.

Here, defendant expressly admitted he was previously convicted of violating section 243, subdivision (d) on July 19, 2010, and that the conviction is a violent or serious felony as defined in section 1170.12, subdivision (b) and thus subject to sentencing pursuant to section 667, subdivisions (b) through (j). And he concedes he "entered waivers regarding his trial rights relevant to the alleged strike convictions." Defendant's admission that this prior battery conviction was a "violent or serious felony" within the meaning of sections 667 and 1192.7 was sufficient evidence to establish that it qualified as a strike under the three strikes law. (*People v. Thomas* (1986) 41 Cal.3d 837, 841–845 [defendant's admission he was convicted of a serious felony, burglary, within meaning of §§ 667 and 1192.7, conceded issue that he committed burglary in a manner rendering it "serious felony" under § 1192.7]; *People v. French* (2008) 43 Cal.4th 36, 50 [noting *Thomas* established "a defendant's admission of an alleged enhancement is valid even if it does not include specific admissions of every factual element required to establish the enhancement"].)

And defendant has not established his counsel provided ineffective assistance by permitting him to admit the strike prior allegation or by not challenging the prior conviction allegation. "To demonstrate ineffective assistance of counsel, a defendant must show that counsel's action was, objectively considered, both deficient under prevailing professional norms and prejudicial. (*Strickland v. Washington* (1984) 466 U.S. 668, 687.) To establish prejudice, a defendant must show a reasonable probability that, but for counsel's failings, the result of the proceeding would have been more favorable to the defendant. (*Id.* at p. 694.)" (*People v. Hinton* (2006) 37 Cal.4th 839, 876.) We "'"… defer to counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel [citation], and there is a 'strong presumption that

13.

counsel's conduct falls within the wide range of reasonable professional assistance.'" [Citation.] "[W]e accord great deference to counsel's tactical decisions" [citation].'" (*Ibid.*) "'"[C]ourts should not second-guess reasonable, if difficult, tactical decisions in the harsh light of hindsight" [citation]. "Tactical errors are generally not deemed reversible, and counsel's decisionmaking must be evaluated in the context of the available facts." [Citation.]' [Citation.]" (*Ibid.*)

Here, there is no evidence defense counsel failed to adequately investigate whether defendant's 2010 conviction qualified as a strike under the three strikes law. And nothing before us precludes the possibility that the record from defendant's 2010 conviction for a violation of section 243, subdivision (d) established it qualifies as a strike. Rather, here, since defendant admitted the conviction constituted a serious or violent felony within the meaning of sections 667, subdivisions (b) through (j), and 1192.7, the appellate record is silent as to whether the record from defendant's 2010 conviction established defendant inflicted great bodily injury on a person who was not an accomplice during the commission of the offense or that defendant previously admitted this conviction qualified as a strike prior. Accordingly, we cannot rule out the possibility that the record did establish as such and defense counsel was aware of this and advised defendant accordingly. (*People v. Maury* (2003) 30 Cal.4th 342, 389 ["To the extent the record on appeal fails to disclose why counsel acted or failed to act in the manner challenged, we will affirm the judgment unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation"]; *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266 [same]; cf. *In re Brown* (2013) 218 Cal.App.4th 1216, 1228–1229 [granting petition for writ of habeas corpus on grounds trial counsel was ineffective where record of defendant's juvenile proceedings obtained by appellate counsel after defendant admitted strike prior enhancement established prior adjudication did not qualify as strike].) For the same reason, we cannot conclude defendant has established he was prejudiced. (*People v. Maury*, *supra*, at p. 389

14.

["prejudice must be affirmatively proved; the record must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different'"].)

We reject defendant's first contention.

## II. Court Prejudicially Erred, in Part, in Failing to Instruct the Jury on a Lesser Included Offense of Count V

Defendant next asserts the court violated its sua sponte duty to instruct the jury on a lesser included offense of count IV, misdemeanor battery on a cohabitant, and a lesser included offense of count V, simple battery, because there was substantial evidence defendant was guilty of only the lesser included offenses.

### A. Standard of Review

"California decisions have held for decades that even absent a request, and even over the parties' objections, the trial court must instruct on a lesser offense necessarily included in the charged offense if there is substantial evidence the defendant is guilty only of the lesser." (*People v. Birks* (1998) 19 Cal.4th 108, 118; see *People v. Breverman* (1998) 19 Cal.4th 142, 162.) The duty extends to every lesser included offense supported by substantial evidence; it is not satisfied "when the court instructs [solely] on the theory of that offense most consistent with the evidence and the line of defense pursued at trial." (*People v. Breverman*, *supra*, at p. 153.) "The existence of '*any* evidence, no matter how weak' will not justify instructions on a lesser included offense, but such instructions are required whenever evidence that the defendant is guilty only of the lesser offense is 'substantial enough to merit consideration' by the jury." (*Id.* at p. 162.) "'Substantial evidence' in this context is '"evidence from which a jury composed of reasonable [persons] could … conclude[]"' that the lesser offense, but not the greater, was committed. [Citations.]" (*Ibid.*) "We independently review a trial court's failure to instruct on a lesser included offense." (*People v. Cook* (2006) 39 Cal.4th 566, 596.)

"'To determine if an offense is lesser and necessarily included in another offense for this purpose, we apply either the elements test or the accusatory pleading test. "Under the elements test, if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, the latter is necessarily included in the former. Under the accusatory pleading test, if the facts actually alleged in the accusatory pleading include all of the elements of the lesser offense, the latter is necessarily included in the former."'" (*People v. Lopez* (2020) 9 Cal.5th 254, 269–270.)

The "duty to instruct fully on all lesser included offenses suggested by the evidence arises from California law alone," (*People v. Breverman*, *supra*, 19 Cal.4th at p. 149) and thus a trial court's error in fulfilling this duty "must … be evaluated under the generally applicable California test for harmless error … set forth in [*People v. Watson* (1956) 46 Cal.2d 818, 836]." (*Id.* at p. 176.) Under *Watson*, reversal is not warranted unless "it appears 'reasonably probable' the defendant would have obtained a more favorable outcome had the error not occurred." (*Breverman*, *supra*, at p. 178; see *Watson*, *supra*, at p. 836.)

"An appellate court applies the independent or de novo standard of review to the failure by a trial court to instruct on an uncharged offense that was assertedly lesser than, and included, in a charged offense." (*People v. Waidla* (2000) 22 Cal.4th 690, 733.)

**B.    Applicable Law**

Section 273.5, subdivision (a) provides: "Any person who willfully inflicts corporal injury resulting in a traumatic condition upon a victim described in subdivision (b) is guilty of a felony …." Misdemeanor cohabitant battery (§§ 242, 243, subd. (e)(1)), on the other hand, does not require infliction of an injury resulting in a traumatic condition.

Battery is the willful and unlawful use of force or violence on the person of another. (§ 242.) "A person need not have an intent to injure to commit a battery. He

16.

only needs to intend to commit the act." (*People v. Mansfield* (1988) 200 Cal.App.3d 82, 88.) Battery with serious bodily injury is battery that causes "a serious impairment of physical condition, including, but not limited to, the following: loss of consciousness; concussion; bone fracture; protracted loss or impairment of function of any bodily member or organ; a wound requiring extensive suturing; and serious disfigurement." (§ 243, subd. (f)(4).)

## C. Analysis

Defendant contends the court erred in failing to sua sponte instruct the jury on battery against a cohabitant (§ 243, subd. (e)(1)) as a lesser included offense of corporal injury of a person in a dating relationship as alleged in count IV (§ 273.5, subd. (a)). He also argues the court erred in failing to sua sponte instruct the jury that simple battery (§ 242) was a lesser included offense of count V, battery with serious bodily injury (§ 243, subd. (d)). The People respond a reasonable jury could not have concluded Doe's injuries were de minimis to sustain a conviction for the lesser included offense to count IV of battery against a cohabitant in violation of section 243, subdivision (e)(1). They also argue any alleged error in failing to instruct the jury on the lesser included offense to count IV of battery against a cohabitant or on the lesser included offense of simple battery on count V was harmless because the evidence was "strong that Jane sustained a serious injury when [defendant] cut her neck with his machete." So, it was "highly unlikely a reasonable jury would have concluded from the evidence that Jane sustained only a de minimis injury, or no injury at all." We agree with the People in part and defendant in part. While the court did not prejudicially err in failing to instruct the jury on the lesser included offense of misdemeanor battery against a cohabitant (§ 243, subd. (e)(1)) as a lesser included offense of corporal injury of a person in a dating relationship as alleged in count IV (§ 273.5, subd. (a)), we conclude the court prejudicially erred in failing to sua sponte instruct the jury that simple battery (§ 242) was a lesser included

offense of count V, battery with serious bodily injury (§ 243, subd. (d)). We address each of these contentions in turn.

### 1. The court did not err in failing to sua sponte instruct the jury on battery of a cohabitant as a lesser included offense of count IV

First, we cannot conclude the court prejudicially erred in failing to instruct the jury on the lesser included offense to count IV of cohabitant battery (§ 243, subd. (e)(1)). Here, the evidence does not support a reasonable inference Doe sustained only a de minimis as opposed to a minor or serious injury as would be required for the jury to conclude defendant was not guilty of count IV, willful infliction of corporal injury resulting in a traumatic condition upon a cohabitant, and instead guilty of battery against a cohabitant.

"It is *injury* resulting in a traumatic condition that differentiates [a section 273.5 offense] from lesser offenses. Both simple assault [citation] and misdemeanor battery [citation] are included in a prosecution of section 273.5." (*People v. Gutierrez* (1985) 171 Cal.App.3d 944, 952.) A "'traumatic condition' means a condition of the body, such as a wound, or external or internal injury, including, but not limited to, injury as a result of strangulation or suffocation, whether of a minor or serious nature, caused by a physical force." (§ 273.5, subd. (d); see *People v. Abrego* (1993) 21 Cal.App.4th 133, 137 (*Abrego*).) Thus, even minor injury to the victim's body may be a sufficient injury for a section 273.5, subdivision (a) offense. (*People v. Silva* (1994) 27 Cal.App.4th 1160, 1166; *Abrego*, *supra*, at pp. 137–138; accord, *People v. Wilkins* (1993) 14 Cal.App.4th 761, 771 ["Section 273.5 is violated when the defendant inflicts even 'minor' injury"].) However, if only de minimis harm is inflicted, a section 273.5, subdivision (a) offense has not been committed. (*Gutierrez*, *supra*, at p. 952.)

Here, the evidence introduced at trial reflected defendant kicked open the motel room door, hitting Doe in the face and knocking her to the ground. Then, while Doe was in and out of consciousness, defendant held a sharp object to her neck and Doe's neck

18.

was cut and bruised after the incident. Corporal Benson testified to seeing a fresh cut with bright red blood on the left side of Doe's neck and bruising on the right side of her neck after the incident. The motel owner testified he observed a big bump on Doe's forehead and scratches and a cut on her neck. Indeed, even Jeffrey, who testified on behalf of the defense, stated he noticed a cut on Doe's neck the day after the incident. The prosecution also introduced into evidence photographs showing Doe's injuries. Such evidence established defendant used physical force against Doe resulting in a wound or internal or external injury that was at the very least minor. (See *People v. Beasley* (2003) 105 Cal.App.4th 1078, 1085 [evidence of bruising sufficient to show that the victim suffered a traumatic condition]; see generally *People v. Wilkins*, *supra*, 14 Cal.App.4th at p. 771 [redness on victim's face and nose, and victim's statements that defendant had hit her and that her face and neck were sore, established probable cause to believe defendant had violated § 273.5].) Because the evidence introduced at trial established defendant inflicted bodily injury on Jane, there was no evidentiary support for the theory defendant could only be found guilty of the lesser offense of cohabitant battery. Put differently, there was insufficient evidence to support a finding by a reasonable jury that defendant committed a battery on Doe but did not inflict a corporal injury resulting in a traumatic condition. Therefore, the trial court did not have a duty to instruct sua sponte on the lesser included offenses of misdemeanor assault and misdemeanor cohabitant battery. (*People v. Breverman*, *supra*, 19 Cal.4th at p. 162.)

However, even assuming arguendo the trial court had a duty to instruct sua sponte on this lesser included offense, we nevertheless conclude the court's failure to so instruct was harmless error under *People v. Watson*, *supra*, 46 Cal.2d 818 because it is not reasonably probable defendant would have obtained a more favorable outcome had such an instruction been given. (*People v. Breverman*, *supra*, 19 Cal.4th at p. 178.) In this case the evidence was strong Doe sustained at least a minor injury when the door struck her in the face and defendant subsequently held a sharp object to her neck. On this

19.

record, it is highly unlikely a reasonable jury would have concluded from the evidence that Doe sustained only a de minimis injury, or no injury at all. Rather, the jury rejected defendant's theory that he did not touch Doe and she was not present when he returned to the motel room. Accordingly, had the trial court instructed on the lesser included offense, it is not reasonably probable defendant would have obtained a conviction of only misdemeanor cohabitant battery (or a not guilty verdict), rather than his section 273.5, subdivision (a) conviction. (*Watson*, *supra*, at p. 836.) Therefore, any alleged instructional error was harmless.

### 2. The court erred in failing to instruct the jury on simple battery as a lesser included offense to count V

On the other hand, serious bodily injury, as required to support defendant's conviction of count V, must be supported by evidence of "a serious impairment of physical condition, including, but not limited to, the following: loss of consciousness; concussion; bone fracture; protracted loss or impairment of function of any bodily member or organ; a wound requiring extensive suturing; and serious disfigurement." (§ 243, subd. (f)(4).) Our Supreme Court has noted "'"[s]erious bodily injury" is the essential equivalent of "great bodily injury" [citation].'" (*People v. Sloan* (2007) 42 Cal.4th 110, 117; accord, *People v. Wade* (2012) 204 Cal.App.4th 1142, 1149 ["'serious bodily injury'" as used in § 243 is essentially equivalent to "'"great bodily injury"'"" as used in § 12022.7].) "'[G]reat bodily injury' means a significant or substantial physical injury." (§ 12022.7, subd. (f).)

And here, we conclude there was substantial evidence which, if accepted by the jury, would absolve defendant from guilt of the greater offense of battery with serious bodily injury, but not the lesser included offense of simple battery. In so concluding, we note it is not clear from the record what evidence the jury relied upon in convicting defendant of battery with serious bodily injury: whether it was evidence defendant

kicked open the door that struck Doe in the head or the evidence he held a sharp-edged object to her throat and she had a cut and bruising on her neck after the incident.

It is possible that, as the People argue in their response brief, the jury relied upon evidence defendant pressed a sharp object to Doe's throat resulting in a cut and bruises to her neck as evidence to support count V. Evidence of this act undoubtedly supports a conviction for battery. (See § 242 [defining simple battery as "any willful and unlawful use of force or violence upon the person of another"].) However, our review of the record and the evidence presented at trial show the jury could have concluded Doe's resulting neck injuries, for which she did not seek medical attention, were not sufficiently "significant or substantial" as required to sustain a finding of battery with serious bodily injury. (See *People v. Hayes* (2006) 142 Cal.App.4th 175, 181–182 [court erred in failing to instruct sua sponte on lesser included offense of battery without injury where reasonable jury could have concluded injury to victim was not severe enough to require professional medical treatment, pictures only showed minor bruising, and victim testified there was only "a little blood" on the laceration and "a little swelling"]; accord, *People v. Birks*, *supra*, 19 Cal.4th at pp. 117–118; see *People v. Breverman*, *supra*, 19 Cal.4th at p. 162.) Thus, the evidence that defendant was guilty only of simple battery as opposed to battery with serious bodily injury was "'substantial enough to merit consideration' by the jury." (*Breverman*, at p. 162.) Accordingly, the court erred in failing to sua sponte instruct the jury on this lesser included offense and we cannot conclude the error was harmless. Rather, it is reasonably probable the jury would have convicted defendant of simple battery had it been instructed on that theory.

Interestingly, though they argued below that count V was supported by evidence defendant kicked in the door striking Jane Doe with such force that she went in and out of consciousness, the People do not make this argument on appeal. Irrespective, as discussed, the evidence defendant was guilty only of simple battery as opposed to battery

21.

with serious bodily injury was "'substantial enough to merit consideration' by the jury." (*Breverman*, *supra*, 19 Cal.4th at p. 162.)

Thus, we reject defendant's contention as it relates to count IV but conclude his challenge has merit with regard to count V. We next consider whether substantial evidence supports defendant's convictions to determine whether the People may retry the defendant on count V or whether that conviction must be reduced to the lesser included offense and the People are barred from retrying him of the greater. (See *People v. Kelly* (1992) 1 Cal.4th 495, 528 ["When a greater offense must be reversed, but a lesser included offense could be affirmed, we give the prosecutor the option of retrying the greater offense, or accepting a reduction to the lesser offense"]; accord, *People v. Hayes*, *supra*, 142 Cal.App.4th at p. 184 [same].)

### III. Sufficient Evidence Supports the Jury's Conclusion Defendant Inflicted Traumatic Injury and Serious Bodily Injury on the Victim

Defendant next asserts his convictions in counts IV and V should be reduced to lesser offenses because the evidence was insufficient as a matter of law to prove Doe suffered a traumatic injury under section 273.5, subdivision (a) or serious bodily injury under section 243, subdivision (d). We conclude sufficient evidence supports these convictions.

#### A. Standard of Review

"'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.'" (*People v. Edwards* (2013) 57 Cal.4th 658, 715.) "A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) The jury's findings on

22.

enhancement allegations are reviewed under the same standard. (See *People v. Wilson* (2008) 44 Cal.4th 758, 806.)

### B. Analysis

Defendant asserts both counts IV and V concerned the same injuries which, he contends, were insufficient as a matter of law to sustain a conviction for domestic violence resulting in traumatic injury under section 273.5, subdivision (a) (count IV) or battery resulting in serious bodily injury under section 243, subdivision (d) (count V). He asserts Doe's injuries were "de minimis"—the responding officer observed no injury to her head as a result of the door hitting her, and the motel owner described, and the photograph depicted, a cut and a few scratches to Doe's neck. He argues, accordingly, each conviction should be reduced to lesser offenses. The People contend, although the jury could have reached the opposite conclusion, "the record supports a finding that the physical manifestations of redness and the 'fresh cut' … to Jane's neck constituted traumatic 'condition[s] of the body … caused by a physical force' as required by section 273.5." They assert "Corporal Benson's photographs showing Jane's injuries specifically capture the 'fresh cut' to her neck," and "[t]his evidence was sufficient to establish serious bodily injury for the battery conviction." They also contend the photographs "clearly show a serious contusion and laceration" that supported a serious bodily injury finding. We conclude sufficient evidence supports defendant's convictions.

As discussed *ante*, a "'traumatic condition' means a condition of the body, such as a wound, or external or internal injury, including, but not limited to, injury as a result of strangulation or suffocation, whether of a minor or serious nature, caused by a physical force." (§ 273.5, subd. (d); see *Abrego*, *supra*, 21 Cal.App.4th at p. 137.) Thus, even a minor injury to Doe's body is sufficient to sustain a section 273.5, subdivision (a) offense. (*People v. Silva*, *supra*, 27 Cal.App.4th at p. 1166; *Abrego*, at pp. 137–138.)

And here, after considering the entire record and drawing all inferences in favor of the judgment, we conclude the record supports a finding the physical manifestations of scratches and a cut on Doe's neck constituted a traumatic "condition of the body … caused by a physical force" as required by section 273.5. They were not so minimal as to compel a finding that Doe did not suffer a traumatic condition. (Cf. *People v. Beasley*, *supra*, 105 Cal.App.4th at p. 1086 [evidence was insufficient to establish traumatic injury finding where no evidence was introduced that victim suffered any wound or injury during certain beating incidents].) Because the record supports a conclusion that Doe incurred physical manifestations of harm—a cut, scratches and bruising to her neck— defendant's challenge to his section 273.5, subdivision (a) conviction fails.

The closer question is whether evidence of Doe's injuries was sufficient to support the jury's conclusion she suffered "serious bodily injury" as required to sustain the conviction on count V. As noted *ante*, the California Supreme Court has held "'"[s]erious bodily injury" is the essential equivalent of "great bodily injury" [citation].'" (*People v. Sloan*, *supra*, 42 Cal.4th at p. 117.) "Great bodily injury 'means a significant or substantial physical injury.'" (§ 12022.7, subd. (f).) "It is well settled that the determination of great bodily injury is essentially a question of fact, not of law. '"Whether the harm resulting to the victim … constitutes great bodily injury is a question of fact for the jury. [Citation.] If there is sufficient evidence to sustain the jury's finding of great bodily injury, we are bound to accept it, even though the circumstances might reasonably be reconciled with a contrary finding."' [Citations.]" (*People v. Escobar* (1992) 3 Cal.4th 740, 750.) "'"A fine line can divide an injury from being significant or substantial from an injury that does not quite meet the description."' [Citations.] Where to draw that line is for the jury to decide." (*People v. Cross* (2008) 45 Cal.4th 58, 64.)

And here, we cannot say as a matter of law evidence of the abrasions, cut, and bruising and discoloration on Doe's neck and the "large bump" on her forehead after the incident was insufficient to establish significant or substantial physical injury. Rather,

though the issue is close, viewing the evidence of Doe's resulting injuries in the light most favorable to the judgment, we conclude there was sufficient evidence to support the jury's conclusion she suffered "serious bodily injury" as a result of defendant committing a battery against her. (See *People v. Washington* (2012) 210 Cal.App.4th 1042, 1047 ["An examination of California case law reveals that some physical pain or damage, such as lacerations, bruises, or abrasions is sufficient for a finding of 'great bodily injury'"]; accord, *People v. Bustos* (1994) 23 Cal.App.4th 1747, 1755 [affirming great bodily injury finding where victim suffered contusions and lacerations to face]; *People v. Sanchez* (1982) 131 Cal.App.3d 718, 734 [evidence of multiple abrasions and lacerations to victim's back, none of which required suturing, and swelling and bruising of eye and cheek sufficient to support finding of "great bodily injury"], disapproved on other grounds in *People v. Escobar*, *supra*, 3 Cal.4th at p. 755; *People v. Jaramillo* (1979) 98 Cal.App.3d 830, 836 [contusions, swelling, "severe discoloration," and look of anguish on child's face coupled with pain from casual touching of shoulder were sufficient evidence of great bodily injury].) That such evidence could be reconciled with a contrary finding does not affect our conclusion. (See *People v. Westerfield* (2019) 6 Cal.5th 632, 713 ["'We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding.' [Citation.]"].) We also note there was evidence Doe was in and out of consciousness during the incident, which the jury could have considered a result of defendant committing a battery against her. Such evidence also supports the jury's finding Doe suffered serious bodily injury. (See § 243, subd. (f)(4) [listing "loss of consciousness" as a serious impairment of physical condition]; *People v. Bustos*, *supra*, at p. 1755 [affirming great bodily injury finding where victim was struck on head and face with

25.

such force it knocked her to the floor].)  Accordingly, we conclude sufficient evidence supports the defendant's convictions of counts IV and V.

We reject defendant's third contention.

## IV. The Court Did Not Prejudicially Err by Not Instructing Jury on Defense of Another

Defendant next asserts he kicked the door open because he was worried Doe was committing suicide, so the court should have sua sponte instructed the jury on defense of another because there was substantial evidence to support this defense.  We disagree.

### A. Standard of Review

We review de novo a court's decision not to give a particular jury instruction. (See *People v. Simon* (2016) 1 Cal.5th 98, 133; *People v. Manriquez* (2005) 37 Cal.4th 547, 581; *People v. Waidla*, *supra*, 22 Cal.4th at p. 733.)  ""'It is settled that in criminal cases, even in the absence of a request, a trial court must instruct on general principles of law relevant to the issues raised by the evidence'" and '"necessary for the jury's understanding in the case."'  [Citations.]  It is also well settled that this duty to instruct extends to defenses 'if it appears the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case.'  [Citations.]"  (*People v. Brooks* (2017) 3 Cal.5th 1, 73.)  "The trial court need not give instructions based solely on conjecture and speculation."  (*People v. Young* (2005) 34 Cal.4th 1149, 1200.)

### B. Applicable Law

CALCRIM No. 840 instructs the jury on the elements of the offense of inflicting injury on a spouse, cohabitant, or fellow parent resulting in a traumatic condition pursuant to section 273.5.  It provides language for an optional third element of the offense:  "The defendant did not act (in self-defense/[or] in defense of someone else).]"  The bench notes to CALCRIM No. 840 note the court has a sua sponte duty to instruct on element 3 if there is sufficient evidence of self-defense or defense of another.

26.

CALCRIM No. 3470 is a separate jury instruction on the right to self-defense or defense of another as a defense to a nonhomicide crime. It provides:

> "Self-defense is a defense to _____ <*insert list of pertinent crimes charged*>. The defendant is not guilty of (that/those crime[s]) if (he/she) used force against the other person in lawful (self-defense/[or] defense of another). The defendant acted in lawful (self-defense/[or] defense of another) if:
>
> "1. The defendant reasonably believed that (he/she/[or] _____ <*insert name of third party*>) was in imminent danger of suffering bodily injury [or was in imminent danger of being touched unlawfully];
>
> "2. The defendant reasonably believed that the immediate use of force was necessary to defend against that danger;
>
> "AND
>
> "3. The defendant used no more force than was reasonably necessary to defend against that danger."

## C. Analysis

Defendant argues the standard jury instruction for CALCRIM No. 840 was supposed to be read to the jury; however, the instruction as given did not include the third element regarding defense of another. He argues the trial court was required to instruct on defense of another as to counts III and IV. The People assert the defense, defense of another, was not supported by the evidence nor did defendant rely on such a defense. Rather, defendant's "own account disavowed *any* responsibility for harming Jane, much less causing her a traumatic injury as is required to convict him for a violation of section 273.5, subdivision (a)." Thus, his defense was "complete denial of guilt, not defense of another." Notably, as discussed, the court subsequently overturned defendant's conviction as to count III, thus we focus our analysis on count IV and agree with the People that the court did not have a sua sponte duty to instruct the jury on this defense.

Here, there was no evidence defendant reasonably believed he needed to use force against Doe to prevent imminent bodily harm to her as required to support the defense of

27.

another theory. Indeed, defendant did not testify he struck Doe in the course of attempting to defend her against herself, as he now contends. Rather, he testified he kicked open the door to the hotel room but did not find Doe. He denied striking Doe at any time or causing her injury. There was also no evidence presented that the wounds Doe sustained to her neck were a result of defendant's attempt to defend her. Thus, we cannot conclude such a defense was supported by the evidence, consistent with defendant's theory of the case that he did not inflict injury on Doe, or that he was relying upon such a defense at trial. Thus, the court did not err in failing to sua sponte instruct the jury on defense of another because neither the evidence nor the defendant's theory of the case supported such a defense. (See *People v. Brooks*, *supra*, 3 Cal.5th at p. 74 [court did not err in failing to instruct on defense defendant was not relying upon, that was arguably inconsistent with his defense, and that was not supported by substantial evidence].) Furthermore, we cannot conclude defendant was prejudiced by the lack of an instruction on defense of another. Rather, as discussed, there was no evidence defendant touched and injured Doe in the course of trying to protect her from imminent harm.

We reject defendant's fourth contention.

## V.     Senate Bill 1393

Senate Bill 1393, signed into law on September 30, 2018, amends sections 667 and 1385 to provide the trial court with discretion to dismiss, in furtherance of justice, five-year enhancements imposed pursuant to section 667, subdivision (a)(1). The new law took effect on January 1, 2019. The law is applicable to those parties, like defendant, whose appeals were not final on the law's effective date.

Here, pursuant to section 667, subdivision (a), the trial court imposed three prior serious felony enhancements to defendant's sentence. Defendant seeks remand to permit the trial court to review these five-year prior serious felony enhancements in light of Senate Bill 1393. The People agree remand is necessary on this basis.

28.

The California Supreme Court has held, when a court is unaware of the scope of its discretionary powers, "the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' [Citations.]" (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.)

Here, as the parties note, defendant was sentenced in this case before Senate Bill 1393 took effect. And the record does not "clearly indicate" the court would not have struck these enhancements if it had had the authority to do so. Accordingly, we agree with defendant and accept the People's concession that remand is required on this basis. In so holding, we note the matter must also be remanded for resentencing based on the court's subsequent reversal of defendant's conviction of count III for burglary, and our conclusion that the court prejudicially erred in failing to instruct the jury on simple battery as a lesser included offense to count V.

## VI.    Senate Bill 136

In supplemental briefing, defendant contends his one-year prior prison term enhancement imposed pursuant to section 667.5, former subdivision (b) must be stricken in light of Senate Bill 136, which was signed into law on October 8, 2019, and became effective on January 1, 2020. The People concede Senate Bill 136 applies retroactively to this case and the prison prior enhancement should be stricken. (See *In re Estrada* (1965) 63 Cal.2d 740, 742.) On remand, we direct the trial court to strike this enhancement.

At the time defendant was charged, convicted, and sentenced, section 667.5, former subdivision (b), provided, in part:

> "[W]here the new offense is any felony for which a prison sentence or a sentence of imprisonment in a county jail under subdivision (h) of Section 1170 is imposed or is not suspended, in addition and consecutive to any other sentence therefor, the court shall impose a one-year term for each prior separate prison term or county jail term imposed under subdivision (h) of Section 1170 or when sentence is not suspended for any felony …."

After defendant was sentenced, but while his case was still pending on appeal, the Legislature enacted Senate Bill 136 (Stats. 2019, ch. 590, § 1).  Effective January 1, 2020, section 667.5, subdivision (b) now provides, in pertinent part:

> "[W]here the new offense is any felony for which a prison sentence or a sentence of imprisonment in a county jail under subdivision (h) of Section 1170 is imposed or is not suspended, in addition and consecutive to any other sentence therefor, the court shall impose a one-year term for each prior separate prison term for a sexually violent offense as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code …."

In other words, a prior prison term enhancement will only apply if a defendant served the prior prison term for a qualifying "sexually violent offense."  The Legislature did not expressly declare or in any way indicate it did not intend Senate Bill 136 to apply retroactively.  "When an amendatory statute … lessens the punishment for a crime …, it is reasonable for courts to infer, absent evidence to the contrary and as a matter of statutory construction, that the Legislature intended the amendatory statute to retroactively apply to the fullest extent constitutionally permissible—that is, to all cases not final when the statute becomes effective.  [Citations.]"  (*People v. Garcia* (2018) 28 Cal.App.5th 961, 972.)

We conclude Senate Bill 136 applies retroactively to this case and, because defendant's prior prison term was not served for sexually violent offenses, the related enhancement imposed pursuant to section 667.5, former subdivision (b) is now unauthorized and must be stricken on remand.

## DISPOSITION

Defendant's conviction for battery with serious bodily injury (count V) is reversed.  On remand, the district attorney may elect to retry defendant for this offense, or accept a reduction to the lesser included offense of simple battery.  (*People v. Kelly*, *supra*, 1 Cal.4th at p. 528.)  In addition, the district attorney may elect to retry defendant for the burglary offense, which was reversed by the superior court for ineffective

assistance of counsel. If, after the filing of the remittitur in the trial court, the People do not bring defendant to retrial on the reversed offenses within the time limit of section 1382, subdivision (a)(2), the trial court shall proceed as if the remittitur constituted a modification of the judgment to reflect a conviction of the lesser included misdemeanor offense of simple battery in violation of section 242, and shall resentence defendant accordingly. (See *People v. Hayes*, *supra*, 142 Cal.App.4th at p. 184; accord, *People v. Edwards* (1985) 39 Cal.3d 107, 118; *People v. Kelly*, *supra*, at p. 528; *People v. Woods* (1992) 8 Cal.App.4th 1570, 1596.) During resentencing, the court should sentence defendant on his remaining convictions and, if the serious felony enhancements remain applicable, the court may exercise its discretion regarding whether to dismiss the section 667, subdivision (a) enhancements in light of Senate Bill 1393. The court is also directed to strike defendants prior prison term enhancements. We further note, "'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances.'" (*People v. Buycks* (2018) 5 Cal.5th 857, 893.) In all other respects, the judgment is affirmed.

PEÑA, J.

WE CONCUR:


HILL, P.J.


DETJEN, J.